**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF GEORGIA**
**BRUNSWICK DIVISION**

THOMAS STARK,

                *Plaintiff*,

vs.

ARA TRANSPORT INC., CANAL
INSURANCE COMPANY, and ALEXIS
RODRIGUEZ,

                *Defendants*.

CIVIL ACTION FILE NO.:
<u>2:23-CV-00074-LGW-BWC</u>

## <u>PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS AND BRIEF IN SUPPORT</u>

COMES NOW Plaintiff Thomas Stark in the above captioned action, by and through his undersigned counsel of record, and files this Motion for Spoliation Sanctions and Brief in Support, respectfully showing the Court as follows:

### INTRODUCTION

Spoliation occurs when a party destroys, significantly alters, or fails to preserve evidence for another's use in the face of pending or reasonably foreseeable litigation. In this matter, Defendants have undisputedly spoliated a multitude of critical evidence in violation of the Federal Rules of Civil Procedure and the Federal Motor Carrier Safety Act. Defendants not only destroyed all the documents they are federally required to maintain after service of this action, but Defendants have also actively tampered with evidence.

First, Defendant ARA Transport Inc. ("ARA") edited the driver logbooks of Defendant Alexis Rodriguez ("Rodriguez") after Rodriguez's deposition but before ARA's deposition. Second, ARA produced these edited driver logbooks documents before the Rule 30(b)(6) deposition and relied on them at the deposition. Third, ARA destroyed federally required driver

and tractor-trailer records after service of this action by changing its WhatsApp phone number, which destroyed the WhatsApp data containing these records. Fourth, the computer ARA maintained with copies of the federally required driver and tractor-trailer records allegedly "broke" after notice of litigation, and then became "lost" during discovery when Plaintiff asked to see if the hard drive could be restored.

Plaintiff can think of no other proof necessary to show the Court that Defendants, not only had the intent to deprive Plaintiff of information, but also had the specific intent to defraud Plaintiff as to the discoverable information. In a situation such as this, the Court must sanction Defendants in order to uphold the integrity of the judicial process and deter future such conduct. As sanctions, Plaintiff requests that the Court strike Defendants' Answer and find Defendants in default. Alternatively, Plaintiff requests that the Court strike Defendants' defenses as to liability; preclude Defendants from relying on any of the spoliated evidence; issue adverse inferences as to the spoliated evidence, including but not limited to that Rodriguez had driven in excess of the maximum amount of hours at the time of the collision; and determine that Plaintiff has proven Defendants are liable for punitive damages at trial. Plaintiff also requests that the Court impose any other sanctions it finds are warranted.

## STATEMENT OF FACTS

### I.   <u>The Automobile Collision</u>

On August 29, 2022, Rodriguez was operating a tractor-trailer for ARA traveling on I-95N when – after coming upon an active auto accident scene – Rodriguez struck a police vehicle that was occupied Stark. (*See* Ex. A, Police Report; Ex. B, DVER.) At the time of impact, around 2:00AM, Stark was writing a police report while the vehicle's emergency lights were activated. (*See Id.*) Multiple police vehicles, an ambulance, and a fire truck all had emergency lights activated at the scene before Rodriguez collided with Stark. (*See* Ex. C, Police Dash Camera Screenshots.)

The middle and right lanes were blocked off with oncoming traffic being diverted to the left lane. (*See* Ex. A, Ex. B, Ex. C.) For over an hour the interstate was blocked as emergency responders worked the prior accident scene. (*See* Ex. C; Ex. D, Prior Accident Report.) During this time, no driver collided with any of the police, ambulance, or fire vehicles on scene. (*See* Ex. A, Ex. D.)

Rodriguez, however, failed to avoid the accident scene and struck Stark's police vehicle while it was parked in the middle lane. (*See* Ex. A, Ex. B.) Following the collision, it is undisputed that: (1) Rodriguez received citations for violating both state and federal law; (2) ARA also received citations for violating federal law as the motor carrier for whom Rodriguez was driving; (3) Stark was transported to the hospital via ambulance because of resulting accident injuries; and (4) both Stark's police vehicle and Rodriguez's tractor-trailer had to be removed by JTLN Saddler Towing and Recovery. (*See* Ex. A; Ex. B; Ex. E, SMS Inspection Report.)

According to the Driver/Vehicle Examination Report ("DVER") issued from the post-accident inspection of Rodriguez and Rodriguez's tractor-trailer, ARA was cited with the following federal carrier violations: (1) Electronic Logging Device ("ELD") – no record of duty status as ELD required because Rodriguez failed to put his device in automatic ELD mode and stated he "had to manually change driving status all the time," which made Rodriguez an "out of service" driver as a matter of law; (2) failure to more or slow down for a stopped emergency vehicle; (3) inoperable required lamp, left side rear turn signal; (4) inoperable required lamp, left side rear break light; (5) no wheel (mud) flaps missing or defective; (6) operating a CMV without proof of a periodic inspection, sticker showed last annual inspection was in October 2020; (7) no or defective lighting devices or reflective material as required; (8) no upper rear retroreflective sheeting or reflex reflecting material requirements for vehicles manufactured after December 1993. (*See* Ex. B.)

Therefore, it is undisputed, that as a result of Rodriguez's logbook not being in automatic ELD mode at the time of the collision, Rodriguez was an "out of service" driver and would be deemed

to have been on duty in excess of the maximum driver hours permitted under federal law. *See* 49 C.F.R. §§ 395.8(a)(1)(i), 395.13(b).

## II.   Defendants Had Constructive and Actual Notice of Litigation

As of the collision date, ARA and Rodriguez had constructive notice of forthcoming expected litigation. In a collision caused by a commercial tractor-trailer, where both vehicles are towed, the tractor-trailer driver is cited, and a party is transported to the hospital, constructive notice of forthcoming litigation occurs at the time of accident. Together, these factors are sufficient to have put ARA and Rodriguez on notice as of August 29, 2022, thus obligating Defendants to preserve all relevant records in anticipation of litigation. In addition, on November 9, 2022, Defendant Canal Insurance acknowledged Plaintiff's letter of representation, which would constitute actual notice. (*See* Ex. F, LOR Acknowledgement.) ARA also performed an internal post-wreck investigation to determine if this collision was preventable or non-preventable, for which it never made a determination. (Ex. G, ARA Rule 30(b)(6) Dep., pp. 67-68, ll. 14-11).

| | |
|---|---|
| 15 It just depends on the situation.  We don't know. | Page 68 |
| 14  Q.  Okay.  After this collision, did ARA do any kind | 1  A.  I'm not sure.  I'm not sure. |
| 15  of an investigation to determine if this was a | 2  Q.  Do you know the difference between preventable -- |
| 16  preventable or non preventable collision? | 3  or does the company know the difference between a |
| 17  A.  (By Mr. Ravelo).  Yes, we did. | 4  preventable and a non preventable collision? |
| 18  Q.  What was the finding of that investigation? | 5  A.  Yes. |
| 19  A.  We talked to the -- to the driver to see what | 6  Q.  What's the difference? |
| 20  happened. | 7  A.  If it could be happened or not. |
| 21  Q.  Did you review any other documents, bodycam | 8  Q.  Okay.  And in your investigation of this |
| 22  footage or anything in this investigation? | 9  collision, what was the company's finding: was this a |
| 23  A.  No. | 10  preventable or non preventable collision? |
| 24  Q.  What was the finding of the investigation?  Was | 11  A.  We -- I didn't get to any conclusion. |
| 25  this a preventable or a non preventable collision? | |

## III.   Defendants Spoliated Evidence by Failure to Preserve, Destruction, & Alteration

### A.  Defendants Spoliated ELD Logbooks and Vehicle Inspection Reports

Defendants failed to maintain federally required ELD logbooks and inspection reports, failed to preserve ELD logbooks and inspection reports for evidence, and significantly altered the ELD logbooks and inspection reports of record.

### i. Rodriguez was ELD out of service every day Rodriquez worked for ARA, which spoliated the logbook of hours that he worked.

As shown above, Rodriguez was in "Non-ELD" mode and thus found out of service at the time of the subject collision. Rodriguez has admitted to not using the required automatic ELD mode, and instead manually entered his hours. (*See* Ex. B.) ARA's most updated FMCSA Compliance Manual dates to 2015 and is out of date with current ELD law. (*See* Ex. G, pp. 15, 217.) It is undisputed every logbook with Rodriguez's signature verifying the driver daily log does not include the note "PTVI" for post-trip vehicle inspection. (*See* Ex. H-1, Rodriguez Driver Daily Logs Set 1; Ex. H-2, Rodriguez Driver Daily Logs Set 2; Ex. H-3, Rodriguez Driver Daily Logs Set 3). However, the supplemental driver daily logs that were produced before ARA's Rule 30(b)(6) deposition *include* the "PTVI" note but are *unsigned* by Rodriguez. (*See* Ex. H-2, Rodriguez Driver Daily Logs Set 2.)

ARA used ELD technology provided by a third-party company, Go Motive. (Ex. G, p. 42.) ARA implemented and set up Go Motive on its tractor-trailers and paid Go Motive to use its ELD platform. (*Id.*) After a review of the Go Motive website, it becomes clear that ARA intentionally or negligently allowed Rodriguez to drive without being in automatic ELD mode, leading him to be out of service every single day he drove a vehicle for ARA. Go Motive instructs commercial carriers that, "*If you have drivers that need to switch modes, we recommend that you mark them as **Required** and put them under the **Other cycle** rule. This will allow them to continue using the mobile app without HOS violations.*" (*See* Ex. I, Go Motive Manual.)

Rodriguez stated that he completed almost all pre-trip vehicle inspections in 30 minutes. (Ex. J, Rodriguez Dep., pp. 15-17.) It is undisputed that Rodriguez claimed to have never done a post-trip inspection with ARA. (*Id.* at pp. 17-18, ll. 25-2.) Rodriguez received numerous violations that a quality pre-trip inspection would have uncovered, including non-working left turn and break lights.

(*See* Ex. B.) Furthermore, the required inspection reports were not in the vehicle, and thus these records were not maintained as mandated by law. (*Id.*)

### ii. The actual driver daily logbooks have been tampered with since the date of the collision.

Defendants have produced three different versions of Rodriguez's logbooks: (1) the original set in the initial discovery production on August 21, 2023; (2) the logbooks produced immediately before the Rule 30(b)(6) deposition on December 20, 2023; and (3) the logbooks produced after the Rule 30(b)(6) deposition on April 30, 2024. (*See* Ex. H-1, Ex. H-2, Ex. H-3.) It is undisputed that, over the three different versions of the produced logbooks, there are three different signatures, either one of two signature patterns or entirely blank. (*See Id.*) It is undisputed that the blank signatures were all produced the day of the Rule 30(b)(6) deposition, and unlike the first set, have a note of PTVI for every single trip. (*See* Ex. H-1, Ex. H-2.) As of this filing, Defendants and Defense Counsel have continued refusing to allow Plaintiff to log into the Go Motive logbook system. Accessing Go Motive would likely give Plaintiff time-stamped data as to logbook edits and signature dates. Excerpts of the three different signatures shown across the three productions are included below.



First Logbook Production

Ex. H-1

| Odometers | |
|---|---|
| **End** | **Distance** |
| 1,031,869 | 135 mi |

...tries and my record of duty status for this

**Driver Signature**

Second Logbook Production

Ex. H-2



Third Logbook Production

Ex. H-3

In Go Motive, any edits to current or past logs will clear the driver's signature and the driver will be required to resign and recertify the edited log to maintain compliance. (*See* Ex. I.) Furthermore, Go Motive appears to require a unique hand drawn signature for every single daily log or edit to the same. (*Id.*) Please see the Go Motive Manual excerpts below.





The two sets of signed logbooks produced by Defendants have differing signatures with one set of signatures containing one dot and the other set of signatures containing two dots. (*See* Ex. H-1, Ex. H-2.) Moreover, these logbooks have identical signature forms across each set, from which we can deduce that the two sets of logbooks were all signed at same time but by a different person. (*Id.*) At bottom, the differing logbook versions produced by Defendants show significant alteration of this evidence before and during litigation.

In fact, Defendants have since confirmed that edits were made to the logbooks in the days leading up to ARA's Rule 30(b)(6) deposition. (*See* Ex. K, Go Motive Metadata.) The Rule 30(b)(6) deponent, ARA President Jheinel Ravelo, made multiple unknown edits to Rodriguez's logbooks from August 2022 when the collision occurred. (*Id.*) These edits were made *after* Rodriguez's deposition but *before* ARA's deposition when the edited logbooks were produced. (*See* Ex. K, Ex. G, Ex. H-3.) However, Mr. Ravelo made no mention of these edits whatsoever at the Rule 30(b)(6) deposition, despite having made them just days before and produced the now admittedly edited versions at the deposition. (*See* Ex. G, H-3.)

### B.  Federally Reqiured Commercial Carrier Records Have Been Spoliated

#### i.  ARA failed to preserve and destroyed commercial carrier records it saved in the company WhatsApp account.

ARA utilized the messaging service WhatsApp to collect and maintain certain records required by the FMCSA. (*See* Ex. G, pp. 74-76; Ex. J, pp. 77-80.) Rodriguez sent all documents required for records retention to ARA via WhatsApp, and Rodriguez confirmed that any such records required under the FMCSA would have been contained in the company owner's WhatsApp account. (Ex. J, pp. 77-80.) However, a month after this case was filed, ARA "stopped having" its WhatsApp account and purportedly lost access to all records it contained. (*See* Ex. G, pp. 74-76.) ARA claimed to have changed the phone number associated with the WhatsApp account and thus lost all the documents associated with that account. (*Id.*) However, a WhatsApp user can change the number associated with a particular account without changing or losing the account itself. (*See* "How to Change Your  Phone Number" at https://faq.whatsapp.com/498754122134583/.)

Even assuming ARA was not aware of this ability, it is undisputed that ARA lost the subject account and destroyed relevant driver and tractor-trailer records as a result. Quite concerningly, ARA kept a backup of these documents on a computer that first broke, and was then outright lost, after ARA discontinued its WhatApp account in June 2023.

#### ii.  ARA failed to preserve commercial carrier records it saved on a computer that was first "broken" then "lost" during litigation.

Every single document that the FMSCA requires a commercial carrier to prepare and retain was spoliated by Defendants on the "broken" company computer that was subsequently "lost" during litigation. (Ex. G, pp. 60-61, 75-76.) ARA failed to keep a backup of any of these files. (*Id.* at p. 73.) ARA claimed that the computer was "fried" so none of the documents or files stored there could be accessed for discovery. (*Id.* at pp. 60-61, 75-76.) ARA confirmed the computer broke *after* the collision, that there was no cloud backup, and that they did not know of any

requirement that required them to be able to produce these documents if the FMCSA performed an audit. (*Id.* at pp. 63-67, 73, 75-76.) ARA further confirmed there are no hard copies at the principal place of business. (*Id.* at p. 73.) Finally, when Plaintiff sought to have a forensic computer expert attempt to salvage the broken computer, ARA claimed it had been "lost" during discovery and it would be unable to produce any of the federally required documents. (*Id.* at p. 77.)

The timeline of the computer being broken and lost shows clear evidence of spoliation. The lawsuit was filed on May 12, 2023, Canal Insurance Company was served on May 19, 2023, ARA's owner changed his number in June 2023, which lost the WhatsApp documents, and the computer broke then lost after the WhatsApp number change. (*See* Ex. G, pp. 75-76.) It is undisputed that the Owner of ARA is the Step-Son of Rodriguez, as well.

### C.  ARA Commited Corporate Malfeasance and Acted With Specific Intent to Tamper With and Deprive Plaintiff of Evidence

As shown above, the statements of Defendants with regard to logbooks and records retention have not added up, and the evience of spoliation continues to mount. On June 26, 2024, Defendants finally produced limited metadata showing when Rodriguez's logbooks were edited. (*See* Ex., K.) The egregiousness of Defendants' spoliation is now beyond dispute as multiple records show ARA has edited the logbooks during the course of litigation. A sample is below.



This excerpt shows only one of many edits made by Jheinel Ravelo, the ARA Rule 30(b)(6) deponent and ARA Owner, to Rodriguez's logbooks during litigation. ARA began editing the

logbooks of Rodriguez the day *after* Rodriguez was deposed. (*See* Ex. J, Ex. K.) Mr. Ravelo is the former stepson of Rodriguez. Even worse, Mr. Ravelo produced these falsified, edited logbooks before the Rule 30(b)(6) deposition and relied on them at the deposition. (*See* Ex. G, Ex. H-2.) Mr. Ravelo specifically added things like PTVI into the notes in hopes to rectify issues Rodriguez had at his deposition. (*See* Ex. J, Ex. H-1, Ex. H-2.) Unfortunately for Defendants, Mr. Ravelo did not realize that editing the logs voided Rodriguez's signature as shown above, which led to Plaintiff's pursuit of the Go Motive metadata.

Over seven months after the now admitted editing of logbooks, Plaintiff now can say without any doubt that Defendants edited the logs *after* Rodriguez's deposition, in a case in which Defendants deny liability as well. What is real, what is edited, and how can Plaintiff or this Court trust a single statement from Defendants in this matter? The only way forward is to impose sanctions on this most egregious spoliation.

**ARGUMENT AND CITATION TO AUTHORITY**

### I.   <u>Legal Standard</u>

Federal Rule of Civil Procedure 37(e) governs the procedures and sanctions available when a party spoliates ESI. **Rule 37(e) "forecloses reliance on inherent authority or state law to determine when certain measures should be used."** *Ala. Aircraft Indus., Inc.,* 2022 WL 433457, at \*13. (emphasis added).

Under Rule 37(e), sanctions can only be imposed if: (1) "electronically stored information that should have been preserved in the anticipation or conduct of litigation" was "lost because a party failed to take reasonable steps to preserve it" and (2) that information "cannot be restored or replaced through additional discovery." Thus, by implication, the moving party must show that the information sought did, in fact, exist at a time when the nonmoving party had a duty to preserve that information.

Rule 37(e) establishes two tiers of sanctions, with lesser sanctions under Rule 37(e)(1) and more severe sanctions under Rule 37(e)(2). *Skanska USA Civ. Se. Inc. v. Bagelheads, Inc.,* 75 F.4th 1290, 1311 (11th Cir. 2023). For the first tier, under Rule 37(e)(1), sanctions should only be imposed "where lost electronic evidence causes 'prejudice to another party'" and then sanctions should be "no greater than necessary to cure the prejudice." *Id.* Thus, Rule 37(e)(1) focuses on the "effect of the violation." *Id.* The advisory committee notes state measures allowed under Rule 37(e)(1) include, "forbidding the party that failed to preserve information from putting on certain evidence, permitting the parties to present evidence and argument to the jury regarding the loss of information, or giving the jury instructions to assist in its evaluation." Fed. R. Civ. P. 37(e)(1) advisory committee note (2015). Some courts have found monetary sanctions to be appropriate under Rule 37(e)(1). *See Doe v. Willis,* No. 8:21-CV-1576, 2023 WL 2918507, at *16 (M.D. Fla. Apr. 12, 2023); *Matter of In re Skanska USA Civ. Se. Inc.,* 340 F.R.D. 180, 191 (N.D. Fla. 2021).

For the second tier under Rule 37(e)(2), sanctions should only be imposed if a court finds "the party acted with the intent to deprive another party of the information's use in the litigation." The "intent to deprive another party of the information's use in the litigation" is the equivalent of bad faith in other spoliation contexts. Skanska USA Civ. Se. Inc., 75 F.4th at 1312. Rule 37(e)(2) sanctions do not require any further finding of prejudice. Fed. R. Civ. P. 37(e)(2) advisory committee note (2015). For Rule 37(e)(2) sanctions, the court may order "adverse jury instructions, and even dismissal or default judgment." *Id.* Thus, Rule 37(e)(2) focuses on the cause of the violation and allows for more severe sanctions than Rule 37(e)(1). *Id.*

## II.    Georgia's State Courts and The Southern District of Georgia Sanction Litigants for Spoliation of Evidence.

The foundational principal of our judicial system is that the courts serve as a fair and level playing field for parties to have their disputes resolved. In order for this fair and level playing field to exist, all parties must be able to gain access to necessary information so that they may present

it before the judge and/or jury. In a perfect world both sides would disclose all pertinent evidence to each other, unfortunately however, it is not a perfect world. Some parties choose to destroy or hide evidence that is pertinent to a case. As a result, the Georgia's Appellate Courts were forced to find a way to deter parties from hiding, destroying, or losing evidence that would be helpful to the other side, so they developed the legal remedy called spoliation.  Spoliation occurs when a party destroys or fails to preserve evidence in the face of pending or contemplated litigation. Baxley v. Hankiel Indus., 282 Ga. 312, 313 (2007).

The Southern District of Georgia has taken a strong stance on Spoliation as well: "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Zietz v. Innzbruck Golf Resort, Inc., No. 2:15-cv-218, 2016 WL 6193475, at *2 (N.D.Ga. Oct. 24, 2016). The standard for determining if sanctions should be imposed for spoliating evidence depends on whether the evidence was tangible evidence or electronically stored evidence ("ESI"). Polk v. Gen. Motors, LLC, No. 3:20-CV-549, 2024 WL 326624, at *17 (M.D. Fla. Jan. 29, 2024). Although the legal standards differ, sanctions can only be imposed if the nonmoving party had a duty to preserve the disputed evidence in the first place. See Fed. R. Civ. P. 37 advisory committee's note to 2015 amendments ("Many court decisions hold that potential litigants have a duty to preserve relevant information when litigation is reasonably foreseeable. Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve. The rule does not apply when information is lost before a duty to preserve arises."); Ala. Aircraft Indus., Inc. v. Boeing Co., No. 20-11141, 2022 WL 433457, at *14 (11th Cir. Feb.  14, 2022) ("[T]he duty to preserve arises when litigation is 'pending or reasonably foreseeable' at the time of the alleged spoliation."). *Kohn v. Camden Cnty. Sch. Dist.*, Civil Action 2:21-cv-108 (S.D. Ga. Mar. 28, 2024)

It is undisputed that records must be stored somewhere and able to be produced within 48 hours if the FMCSA requests them, FMCSR 390.29. It is undisputed Defendants have lost all of their documents after service between the changing of the number using what's app and the "broken", now missing computer disappearing after service. It is also undisputed that Defendants' actively have edited and tampered with evidence since suit began.  Therefore, as in *Kohn* this court should find that there was a duty to preserve the documents lost, in a collision where the driver was found out of service, was ticketed, both vehicles were towed, and the injured officer was transported to the hospital via EMS. In addition to the foreseeability of the suit, the Court should also find that Defendants were on actual notice of the suit, 72 days later, on November 9, 2022, when Canal Insurance acknowledged that Plaintiff 's letter of representation.

### III.   <u>Georgia State Law Standard on Which the Court Should Rely Under Rule 37(e)</u>

When a party spoliates evidence, it is an affront to fairness and an utter disregard to the purpose of our judicial system. As a result, judges have been keen to identify and severely punish those who attempt to win their case through the spoliation of evidence. In many cases judges have gone as far as to strike the Defendant's answer for their egregious conduct. *See Algeria v. Howard*, et al, Superior Court of Dekalb County, 10-CV-10597-1, Judge Courtney L. Johnson; *Godfrey v. Trinity Towers*, State Court of Fulton County, 2008EV005791B, Judge Patsy Y. Porter; *Walters v. Kroger*, State Court of Gwinnett County, 2009C-14740-4, Judge Joseph C. Iannazzone. Striking a party's answer is one of the most powerful decisions that a court can make because this forces the party into default. Default allows for a judgment to be entered in favor of the party who did not spoliate evidence.

Notice of contemplated litigation is the key factor in triggering a Defendant's duty to preserve evidence. The most useful defense to spoliation motions has been that the party had no notice of the potential suit, however recently there was a landmark case in Georgia, regarding this.

A baby was born in Henry County and a routine part of the process is fetal monitoring strips are generated to keep track of a baby's heartbeat. *Phillips v. Harmon*, 297 Ga. 386, 774 S.E.2d 596 (2015). Nurses many times will make notes about the baby's heartrate and possible hypoxic danger on these fetal monitoring strips. *Id.* The baby in *Phillips* suffered prolonged oxygen deprivation, which resulted in severe hypoxic injury, including spastic quadriplegia, blindness and a speech impediment. *Id.* The fetal monitoring strips were destroyed 30 days after the birth. *Id.* Henry County kept their records electronically, and presented some non-electronic data that the nurses did not make notations on the deleted records, however as a result of the baby's injuries the hospital's "Sentinel Events Policies" internal investigation was triggered. *Id.* Plaintiff stated that because this internal investigation occurred, it put Defendant on notice of a potential suit and required them to preserve all the appropriate evidence including the fetal monitoring strips. *Id.*

The trial court denied Plaintiff's Spoliation Motion, which led to the case going to trial and a verdict for Defendant. *Id.* Plaintiff then appealed the decision on the spoliation motion to The Georgia Court of Appeals. *Id.* The decision of the trial Court was affirmed because the Court of Appeals found that Defendant did not have notice of "pending or contemplated" litigation. *Id.* The reasoning behind this decision was that the Court of Appeals determined <u>Baxley</u>'s wording of the phrase "potential for litigation" referred to litigation that was "contemplated or pending" and nothing more. *Id.*

The case was then appealed to the Supreme Court of Georgia, where the burden of notice would be forever changed. First the Supreme Court determined that the Georgia Court of Appeals' analysis of "potential for litigation" was incorrect and were disapproved. *Phillips v. Harmon*, 297 Ga. 386, 774 S.E.2d 596 (2015). The Supreme Court of Georgia then held "the duty to preserve relevant evidence must be viewed from the perspective of the party with control of the evidence and is triggered not only when litigation is pending but when it is reasonably foreseeable to that

party." *Id.* The case goes on to further exchange that notice of the foreseeability of potential litigation can be either constructive or actual, and that Defendant's actions after the event that gives rise to the suit may demonstrate constructive notice, for example the internal investigation done by Defendant. *Id.* Many factors that can give rise to the notice of contemplated litigation were then discussed as follows: 1) the type and extent of the injury, 2) extent to which fault for the injury is clear, 3) potential financial exposure if a Defendant is found liable, 4) relationship and conduct between the parties, 5) any past litigation between the parties, 6) any threatened litigation over the matter, 7) frequency that litigation occurs from similar events, 8) initiation and extent of internal investigations, 9) notification of counsel or insurers, 10) any expression that shows the defendant was acting in anticipation of litigation. *Id.* Finally, and with much importance the Supreme Court also held "certainly a trial court has wide discretion in adjudicating spoliation issues, and such discretion will not be disturbed absent abuse." *Id.*

The factors established by *Phillips* are clearly applicable to this case: 1) both vehicles were towed, a citation was issued to Defendant, and Plaintiff required EMS transportation, 2) Liability is clear, albeit denied by Defendants, as Defendants was *See* Ex. d, 3) Defendants have financial exposure, 4) ARA performed an internal investigation where they spoke to their driver 5) there is no past litigation between these parties, 6) The Insurance Carrier acknowledged representation on November 9, 2022, and a lawsuit was filed on May 12, 2023, 7) Commercial vehicle collisions are commonly litigated, 8) an internal investigation was done and the spoliation of What's App and the lap top, , 9) the insured were put on notice, 10) Representation was acknowledged November 9, 2023 and the company changed their phone number and laptop broke after service. *Phillips v. Harmon*, 297 Ga. 386, 774 S.E.2d 596 (2015).

"Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation." *Baxley v. Hankiel Indus.*, 282 Ga. 312, 313 (2007); *Bouvé &*

16

*Mohr, LLC v. Banks*, 274 Ga. App. 758, 762 (1) (618 S.E.2d 650) (2005). "The suppression of some of a series of documents admitted to be in possession of the party who produces them is evidence that the documents withheld afford inferences unfavorable to the party who withholds them." *Georgia Railroad Co. v. Lybrand*, 99 Ga. 421, 436 (1896). "All efforts by either party to a suit or his authorized agent to destroy fabricate or suppress evidence may be shown, such acts being evidence in the nature of an admission that the party has no sufficient case unless added by suppressing evidence by the fabrication of more evidence. *Georgia Railroad Co. v. Lybrand*, 99 Ga. 421, 437 (1896*). Bouvé & Mohr, LLC v. Banks*, 274 Ga. App. 758, 762 (2005). Such conduct "creates the presumption that the evidence would have been harmful to the spoliator." *Baxley v. Hankiel Indus.*, 282 Ga. 312, 313 (2007).

Defendants also have demonstrated a clear disregard for good faith discovery. As mentioned above not only did they lose almost every document they are federally required to maintain, but the logbooks in their possession they have actively edited while this matter is in suit. The 30b6 deponent even brought these logs upon which he perpetuated this fraud to his deposition and accused Plaintiff's counsel of speculation. Plaintiff prays that this Court make an example of this unconscionable behavior.

The Georgia Court of Appeals struck the answer of the Defendants in Howard where it was held "Intentionally abused the discovery process and prejudiced the plaintiff by spoliating "crucial" evidence, i.e., by destroying computer records and other documents and by making repairs on the tractor trailer, when it is undisputed that they had already anticipated that there would be litigation arising from the collision. Howard v. Alegria. 321 Ga. App. 178, 178, 739 S.E.2d 95, 97 (2013). Furthermore, the Court of Appeals held that the Defendants in that matter "Acted willfully in bad faith and with a conscious disregard of the consequences by repeatedly and knowingly making false statements that relevant, requested documents either never existed or had

been destroyed within six months of the collision, but, after the plaintiff filed his motion for sanctions, claiming that they had just found the documents, a claim the court deemed incredible." (*Id.*). Finally in that matter, the trial court then sanctioned the defendants by striking the joint answers of the driver, insurance company and owner of the tractor trailer, specifically because of the egregious acts of spoliation committed by the company that owned the tractor trailer. The Georgia Court of Appeals affirmed with decision, with no dissents.

In our case, not only did Defendants lose the documents after the initial letters that would have caused the anticipation of litigation, but as shown above ARA's President changed his number to lose the Whats App data, and their computer "broke" within a month of service.. Furthermore, when asked if Plaintiffs could inspect and try to restore the broken computer, it is undisputed the Computer, like everything else had disappeared. Most concerning of all is the now clearly undisputable edits done to Defendants log books, as evidenced by the Go Motive website, the signatures, and the metadata at long last produced. Plaintiff believes Defendants egregious conduct can only be classified as unconscionable, and prays this Court find the same.

As demonstrated by the Court in *Baxley* destroyed evidence "creates a presumption that the evidence would have been harmful to the spoliator." Therefore, the court should find that Defendant was driving out of service and was unfit for service.

**IV.**   **Punitive Damages Should be Heard by the Jury**

Defendants have violated multiple provisions of federal law and should be liable for punitive damages. Georgia law, O.C.G.A. § 51-12-5.1, allows for punitive damages to be awarded in certain circumstances. The subsections that are applicable here are (b) and (f) which state:

"(b) Punitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice,

fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

(f) In a tort case in which the cause of action does not arise from product liability, if it is found that the defendant acted, or failed to act, with the specific intent to cause harm, or that the defendant acted or failed to act while under the influence of alcohol, drugs other than lawfully prescribed drugs administered in accordance with prescription, or any intentionally consumed glue, aerosol, or other toxic vapor to that degree that his or her judgment is substantially impaired, there shall be no limitation regarding the amount which may be awarded as punitive damages against an active tort-feasor but such damages shall not be the liability of any defendant other than an active tort-feasor." , O.C.G.A. § 51-12-5.1

Plaintiff is without words on the absolute disregard of Federal Law by Defendants in this matter. The FMCSA has extensive document retention requirements, and post collision protocols. Yet, Defendants are adamant in their denial of liability, even though: 1) their driver received a citation, 2) they failed to perform the federally required records, 3) changed their phone number and the company computer broke after Canal insurance was served. Defendants are using their entire want of care in following Federal Law as their greatest defense. How can Plaintiff fully prosecute their case without all of this evidence? However, of the evidence produced what is real? When did Rodriguez sign these logs? It is now undisputed that the Company actively edited the logbooks following the deposition of Rodriguez. Plaintiff prays that this corporate malfeasance be viewed as the specific intent to not only defraud Plaintiff, but the Court, the legal system and the jury. Go Motivelogbooks.  Defendants' objections to this outright tampering of evidence should be seen as a further lack of remorse. These edits were made 7 months ago and only just now revealed on 6/26/24. Plaintiff is unaware of any caselaw where, a defendants blatant disregard for federal was rewarded with anything other than sanctions **Therefore, Plaintiff prays that this**

**Court should find punitive damages are applicable, in order to send a message that this type of behavior is unacceptable and will not be tolerated in the State of Georgia.** (emphasis added).

"In determining whether to impose sanctions for evidence spoliation, trial courts routinely and necessarily make factual findings about whether spoliation occurred, whether the spoliator acted in bad faith, the importance of the compromised evidence, and so on.  Spoliation issues often arise before trial, and sanctions for spoliation may include the removal of certain evidence and issues from the jury's consideration. The trial court — not the jury — determines what evidence the jury may hear, and which issues it must resolve." [Fn omitted]. <u>Bouvé & Mohr, LLC v. Banks</u>, 274 Ga. App. 758, 762 (2005). However, there is no requirement that a finding of bad faith be made in order for the Court to impose sanctions for spoliation.  <u>Wal-Mart Stores v. Lee</u>, 290 Ga. App. 541, 546 (2008). Even though there is no requirement of finding bad faith, Defendants undoubtedly acted in bad faith. Defendants violated a public law and our Court of Appeal has held that this is indicative of bad faith. If a party fails to comply with public law that benefits the other party, then it is generally regarded as "acting in bad faith". <u>Cf. Pickett v. Georgia</u>, F. & A.R. Co., 98 Ga. App. 709, 712, 106 S.E.2d 285, 287 (1958) (finding that party's failure "to comply with a public law made for the benefit of the opposite party or enacted for the protection of the latter's legal rights" indicated party's bad faith for purposes of attorney fee statute).

As shown above, Defendants utter disregard of federal law, editing of logbooks, and destruction of evidence should lead to a finding of bad faith as mentioned in <u>Pickett</u>.

The Supreme Court of Georgia requires a meaningful link between the Plaintiff's claim and the suppressed or destroyed evidence.  But the movant is not required to prove what the spoliated evidence in fact showed, but merely has to suggest what it possibly could have shown. <u>Baxley v. Hankiel Indus.</u>, 282 Ga. 312 (2007). Because the presumption arises against the spoliator, the Supreme Court gave the example that the jury could infer that the destroyed tape

showed the drunk driver with car keys in his hand, evidence of an element of Plaintiff's dram shop claim. Baxley v. Hankiel Indus., 282 Ga. 312 (2007). As shown above, Defendants even edited logbooks after a bad deposition in an attempt to mitigate their exposure, then actively relied on those and produced them the day of the 30b6 deposition.

Available remedies for Spoliation are "1) Charge the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; 2) dismiss the case..." *Wal-Mart Stores v. Lee*, 290 Ga. App. 541, 545 (2008). "This is not an exhaustive list of sanctions a trial court may impose; rather, 'the trial court has wide latitude to fashion sanctions on a case-by-case basis, considering what is appropriate and fair under the circumstances." *Id.*

Based off the actions of Defendants, Plaintiff prays that this Court strikes the answer of Defendants and finds them in default. However, with violations this egregious jury charges are warranted as well so Defendants cannot mitigate the exposure of these facts by being found in default. Otherwise, it would encourage companies to spoliate evidence to be found in default if a case begins to go poorly. **A foreign company should not be allowed to profit in Georgia, yet avoid liability when it seriously Georgia residents. Furthermore, this level of reckless disregard for Georgia's Judicial System and Federal Law should me met with the harshest punishments that this Court can impose**. (emphasis added). Commercial vehicles are highly dangerous, even more so when in the wrong hands. Plaintiff understands that the Court has a wide latitude of discretion in what kind of punishments to award, but Plaintiff prays this Court will send the strongest message it can that the actions by Defendants are unacceptable in the State of Georgia

Where the trial court bases its order finding spoliation on undisputed facts, it is not necessary to hold a hearing. Bouvé & Mohr, LLC v. Banks, 274 Ga. App. 758 (2005). If the Court finds that the undisputed evidence does not give it sufficient information to impose the requested

sanctions, a hearing would be necessary. In that the undisputed evidence in this case shows that the Defendant failed to preserve highly probative evidence, it is unnecessary that a hearing be held to grant the requested sanctions. *Id.*

Here the undisputed facts show that the Defendants actively tampered with evidence during litigation, produced this tampered evidence to assist them in a 30b6 deposition, spoliated everything Defendants were required to preserve, and actively fabricated their evidence. Therefore, a hearing is not necessary. Bouvé & Mohr, LLC v. Banks, 274 Ga. App. 758 (2005).

## CONCLUSION

Based on the above, Plaintiff respectfully moves this Court to enter an Order that establishes: (a) striking the Answer and any other defensive pleadings; (b) that the Court will instruct the jury that Defendants spoliated material evidence that it knew would have been harmful to Defendants, including but not limited to Defendant driver being out of service every day he drove, failed to perform a singular pre-trip  or post trip inspection, and had driven beyond the maximum amount of hours allowed at the time of the collision; (c) to charge the jury that the spoliation of evidence establishes that the evidence is harmful to the spoliator; (d) That uncapped punitive damages us a question for the jury (e) award Plaintiff attorney's fees for this matter as the Court sees fit. Plaintiff also requests the Court impose any other sanctions it finds are warranted.

Respectfully submitted the 7th day of July 2024.

**MORGAN & MORGAN**

By: *Parker Green*
**PARKER GREEN**
Georgia Bar No. 130593
By: *John O'Briant*
**JOHN O'BRIANT**
Georgia Bar No. 130593
*Attorneys for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

THOMAS STARK,

               *Plaintiff*,

vs.

ARA TRANSPORT INC., CANAL
INSURANCE COMPANY, and ALEXIS
RODRIGUEZ,

               *Defendants*.

CIVIL ACTION FILE NO.:
2:23-CV-00074-LGW-BWC

## **CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that a true and correct copy of the foregoing Motion for Spoliation and Sanctions has this day been served upon all counsel of record via the Court's CM/ECF electronic docketing system.

               By: *Parker Greeen*
                   **PARKER GREEN**
                   Georgia Bar No. 130593