UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| THOMAS STARK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 2:23-cv-00074-LGW-BWC |
| | ) |
| ARA TRANSPORT INC., | ) |
| CANAL INSURANCE COMPANY, and | ) |
| ALEXIS RODRIGUEZ, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS ARA TRANSPORT INC. AND ALEXIS RODRIGUEZ'S RESPONSE TO PLAINTIFF'S FIRST SUPPLEMENTAL REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR SPOLIATION SANCTIONS**

Defendants ARA Transport, Inc. ("ARA") and Alexis Rodriguez ("Rodriguez") file this response to Plaintiff's First Supplemental Reply in Support of Plaintiff's Motion for Spoliation and Sanctions, showing the Court as follows:

**INTRODUCTION[1]**

Since Defendants' last briefing that was submitted to the Court on July 29th, Defendants ARA and Rodriguez have supplemented discovery numerous times, bringing Defendants' most recent production to their twelfth Supplemental discovery response. But contrary to Plaintiff's assertions that Defendants made no attempt to obtain and produce discoverable evidence until after Plaintiff filed the underlying motion, Defendants have actively pursued their discovery obligations to Plaintiff since the onset of litigation. Further, Defendants have been in relentless

---

[1] Defendants additionally respond to Plaintiff's initial Reply Brief (Doc. 67). As such, Defendants incorporate by reference herein the facts, argument, and legal authority contained in Defendants ARA Transport, Inc. and Alexis Rodriguez's Opposition to Plaintiff's Motion for Sanctions (Doc. 60).

pursuit of the GoMotive and cell phone data since December of 2023. (*See* Doc. 37, p. 4). Contrary to what Plaintiff has asserted in his briefing to this Court, Defendants and their Counsel have cooperated with Plaintiff and Plaintiff's Counsel not only throughout the litigation process, but specifically with the pursuit and production of the electronically stored information sought by Plaintiff.

As further set forth below, Defendants and their Counsel have not only been candid with Plaintiff, his Counsel, and this Court regarding the status of the evidence sought by Plaintiff but have also maintained an open line of communication with Plaintiff's Counsel regarding the specific efforts taken to obtain and produce the evidence. These efforts include, but are not limited to: retaining a forensic data expert to perform a download of Defendant Rodriguez's cell phone, many subsequent hours spent reviewing the cell phone data to identify and redact any communications that fall within the attorney-client privilege and the production thereof, and, importantly, over thirty (30) attempts at contacting GoMotive via email and phone by Defense Counsel, Defense Counsel's paralegal, and even Defense Counsel's aforementioned retained expert. (*See* Exhibit A, Affidavit of Rebekah Murray).

These efforts, which are demonstrated by the exhibits attached hereto, belie Plaintiff's insidious accusations that Defendants and/or Defense Counsel have committed fraud upon the Court as well as perjury in an attempt to spoliate evidence. Plaintiff's accusations to this affect are not only unsupported by the facts, but applicable law. Defendants and their Counsel have strived to cooperate with Plaintiff and his Counsel and continue to attempt to do so despite the resistance of Plaintiff's Counsel (*See* Exhibit B, September 18, 2024 Email from John O'Briant to Edward Hughes) and Defense Counsel Tracy O'Connell's request for an opportunity to confer. (*See* Exhibit C, October 7, 2024 email exchange between Tracy O'Connell and John O'Briant).

2

In sum, Defendants and their Counsel have continuously made efforts to obtain the discovery sought by Plaintiff, have kept Plaintiff's Counsel informed as to each of these efforts and when these efforts were made, retained an expert at their own volition in order to facilitate these efforts, offered a joint inspection, and have offered Plaintiff's Counsel the opportunity to redepose Defendants in order to clarify any discrepancies. Plaintiff neglects to mention any of this in his briefing to the Court and instead attempts to perpetuate the false narrative that Defendants and their Counsel have engaged in unscrupulous conduct, or at the very least have been complicit in allowing their clients to do so. Defendants respectfully request that the Court consider the arguments and evidence presented by Defendants which disprove Plaintiff's allegations, and, ultimately deny Plaintiff's Motion for Sanctions and further find there has been no fraud upon by the Court by Defendants or Defense Counsel.

## FACTUAL ALLEGATIONS

Plaintiff alleges that Defendants ARA and Rodriguez have acted in bad faith to intentionally deprive Plaintiff of evidence. Specifically, Plaintiff accuses Defendants of committing perjury in the form of deposition testimony, submitting falsified affidavits, and making material misrepresentations in their responses to Plaintiff's discovery requests. Plaintiff goes even further to accuse Defendants of "attempting to cover it up" and thereby committing "fraud upon the court." In doing so, Plaintiff neglects to mention pertinent facts and information concerning the underlying electronically stored information; namely, the WhatsApp messages and GoMotive data.

In December of 2023, Defense Counsel and Plaintiff's then-Lead Counsel, Parker Green, had discussed the need for the requested data and came to an agreement in which Defense Counsel agreed to cooperate with Plaintiff's Counsel regarding the production of Defendants'

available digital records on business and electronic devices and cooperate on making whatever devices were available to be examined by a forensic expert Plaintiff would retain. This was memorialized both in email as well as in the Joint Status Report filed with the Court on December 29, 2023. (*See* Doc. 37, p. 4; *see also* Exhibit D, December 29, 2023 emails between Edward Hughes and Parker Greene). Defense Counsel has not failed in their obligations.

   a. GoMotive

Both Plaintiff and Defendants have attempted to obtain information from GoMotive regarding the drivers' logs during the pendency of this litigation. On December 19, 2023, Defense Counsel was copied on an email from Lauren Whittemore, GoMotive's Senior IP Counsel, to Parker Green, Plaintiff's lead Counsel at the time. (*See* Exhibit E, December 19, 2023 Email from Lauren Whittemore to Parker Green). Ms. Whittemore's email stated that GoMotive was in receipt of a subpoena from Plaintiff to GoMotive that was received on December 18, 2023. (*Id.*). Ms. Whittemore stated that GoMotive "objects to this subpoena to the extent that it seeks production which would cause Motive to violate the Stored Communications Act; seeks information protected from disclosure by the attorney-client privilege, the work-product doctrine, and/or any other applicable privilege or protection; seeks confidential or highly sensitive information, including without limitation trade secrets, proprietary and/or confidential business information,…" (*Id.*).

Defense Counsel agreed to assist Plaintiff with obtaining this information and has been pursuing the metadata from GoMotive since that time. (Ex. A, Murray Affidavit). However, there was no agreement by Defense Counsel that provided for Plaintiff's Counsel to have direct access to electronic data, nor as to any ongoing obligation to repeatedly respond to questions or accusations by Plaintiff's Counsel on matters not covered in actual discovery requests. Shortly

after Defense Counsel agreed to assist, a paralegal from Defense Counsel's office began her attempts to gain Defendants' GoMotive login credentials in January 2024. (Ex. A, p. 1). The account was accessed, and six months of drivers' logs were extracted that were subsequently produced in Defendants' fifth supplemental production to Plaintiff on February 27, 2024. (Ex. A, p. 1).

Exhibit A is the affidavit of said paralegal, Rebekah Murray. Ms. Murray's affidavit explains in chronological order and in great detail the substantial efforts that were made to contact GoMotive, whether a response was received from GoMotive, and the details of GoMotive's response when given. Screenshots are provided to support the statements in the affidavit. Defendants will not recite each and every detail that is set forth in the affidavit. However, the affidavit disproves Plaintiff's accusations that Defendants' and Defense Counsel's representations as to the difficulty faced in getting the GoMotive metadata is untrue. Rather, Exhibit A shows that between Defense Counsel and Ms. Murray, over thirty phone calls and/or emails were made to GoMotive in an attempt to obtain the metadata requested by Plaintiff and that the majority of these contacts were not fruitful or were completely ignored.

Initially, Ms. Murray was informed by GoMotive that because she was not listed as an "Adminstrator" on ARA's account, she could not be given any information regarding ARA's account. (Ex. A, p. 3). Ms. Murray continued to call, and after finally being transferred to someone in GoMotive's legal department, Ms. Murray was informed that ARA's administrator for their account had to be present on the call in order for any account information to be shared or discussed.

To remedy this problem, Ms. Murray contacted Ms. Carrascal and sent a consent form that would allow Defense Counsel and Ms. Murray to speak with GoMotive regarding ARA's

5

account. Additionally, Ms. Carrascal called GoMotive herself. It was later discovered that while this phone call was documented, a request was not. Finally, on July 24, 2024, Mr. Hughes, Ms. Murray, and Ms. Carrascal spoke with GoMotive by phone and Ms. Carrascal gave GoMotive authorization to discuss ARA's account with her legal team. (Ex. A, p. 8). On July 29, 2024, a representative from GoMotive's IT department sent an email to Ms. Carrascal stating that the metadata for log edits was "not available." (Ex. A, pp. 10-11).

Meanwhile, and despite this hurdle, an undeterred Ms. Murray continued to contact both GoMotive's legal department and IT department both before and after the July 29 email from GoMotive. Mr. Hughes also sent emails to GoMotive's legal representative, Lauren Whittemore, reiterating Ms. Murray's requests and explaining the necessity of obtaining the information sought. (*See generally,* Ex. A). Frustrated with the lack of response from GoMotive, Defense Counsel requested that their retained expert, Rob Draper, also contact GoMotive in hopes that Mr. Draper may finally get a response. (*See* Exhibit F, August 26, 2024 Email from Rob Draper to GoMotive). No such luck.

Despite indications that there was no metadata available, finally, on September 11, 2024, Mr. Richardson emailed Ms. Murray the metadata for the signatures that was then provided to Plaintiff's Counsel with Defendants' 12th Supplemental Production. (Ex. A, p. 14).

While lengthy, the above summary is merely a snapshot of the entirety of the efforts made by Ms. Murray and Defense Counsel that is fully explained in Ms. Murray's affidavit. The difficulties presented by GoMotive cannot be understated. Furthermore, Defense Counsel and Ms. Murray communicated candidly and frequently with Plaintiff's Counsel regarding these efforts and the responses (or lack thereof) from GoMotive. It is disingenuous at the very least for Plaintiff to assert that "[a]ll Defense Counsel and Defendants had to do was click on compliance,

click logs, click the driver's name and a date, and in the top right corner it reads 'view edit history.'" (Doc. 67, p. 14). As explained above and in Ms. Murray's affidavit, getting the metadata from GoMotive was far more complex than clicking a button.

    b. *WhatsApp Data*

During the deposition of Defendant Rodriguez on December 13, 2023, Defendant Rodriguez stated that he communicated with ARA and sent business related documents to ARA through WhatsApp. (Doc. 60, Ex. A, 78:17). Plaintiff's Counsel asked that Defendant Rodriguez's WhatsApp information be downloaded and given to Defense Counsel. (*Id.* at 78:21-24). Defense Counsel retained Rob Draper, a forensic data expert, to assist with obtaining the WhatsApp data from Defendant Rodriguez's cell phone. (*See* Exhibit G, Affidavit of Rob Draper). The assistance of an expert was needed for this data collection as Defendant Rodriguez's phone had been damaged and was subsequently lost in January of 2024, and Defendant ARA's representative, Jheinel Ravelo, stated that his access to WhatsApp data may be inaccessible as he changed phone numbers. (Doc. 60, Ex. D).

Defendant Rodriguez provided his replacement cell phone to Mr. Draper who performed a download of the device, including WhatsApp data. Defense Counsel reviewed the WhatsApp messages between Defendant Rodriguez and Mr. Ravelo and provided <u>all</u> messages to Plaintiff's Counsel that did not fall within the attorney-client privilege.

The WhatsApp data was provided to Plaintiff's Counsel in two forms: a link that provided Plaintiff's Counsel access to a software called Cellebrite in which the WhatsApp messages could be viewed using the software, as well as a report generated by the Cellebrite software in PDF format. Along with the production of this information, Defense Counsel sent a letter to Plaintiff's Counsel explaining that Rob Draper had been retained as a consulting expert for the purposes of

assisting with the download of Defendant Rodriguez's phone and that the only redactions pertained to material protected by the attorney-client privilege. (*See* Doc. 70-2). Defendants produced a privilege log along with this production. Out of all the messages retrieved from the download, only **one** message appeared as "Deleted."[2] One message refers to photographs having been deleted, however Plaintiff declined an opportunity to depose the Defendants on the issue. As explained below, one message was redacted.

### ARGUMENT AND CITATION TO AUTHORITY

In his supplemental brief, Plaintiff not only accuses Defendants of spoliation for the reasons alleged in Plaintiff's prior briefing, but Plaintiff now asserts that Defendants are "liars," have committed perjury, admitted to spoliating evidence, mislead Plaintiff, and committed fraud upon the Court. Despite the seriousness of these allegations, Plaintiff only cites to one case as supporting legal authority. (Doc. 70, p. 9). This is unsurprising as not only has Plaintiff failed to prove that Defendants have spoliated evidence as addressed more thoroughly in Defendants' Response (*see* Doc. 60), but the lack of legal authority cited by Plaintiff in his Supplemental Reply is indicative of the weakness of Plaintiff's arguments that are unsupported by both law and fact.

   A. *Collins-Williams v. Contour Eastwyck LLC is Distinguishable and Does not Provide a Basis for the Imposition of Sanctions in this Case.*

Plaintiff refers to Judge Pannell's order in *Collins-Williams v. Contour Eastwyck LLC*, No. 1:20-CV-3129-CAP, 2022 WL 17828934 (N.D. Ga. Dec. 15, 2022), in support of his contention that spoliation sanctions are warranted in the case at hand. But the facts which gave rise to the

---

[2] The subject-matter of the deleted message does not appear to be relevant to any issue in this case as it is apparent from the series of messages and/or attachments that message pertains to HOA fees of the apartment complex Mr. Rodriguez was residing in at the time.

imposition of sanctions in *Collins-Williams* go far beyond what Plaintiff alleges constitutes spoliation in this case.

In *Collins-Williams*, the plaintiffs brought a premises liability case against the defendants after Tijuana Frazier was shot and killed in her apartment complex owned by defendants. 2022 WL 17828934 at *1. There are many distinctions between *Collins-Williams* and this case, the first of which is the vastness and depth of the discovery disputes in *Collins-Williams* which is evident by the length of the opinion alone. Prior to the imposition of sanctions, the plaintiff filed a motion to compel and not one, but two motions for sanctions. *Id.* at *1, 5. The court held two hearings on the motions with the second hearing lasting two days. *Id.* at *1. The crux of the discovery disputes in *Collins-Williams* is difficult to state concisely, but mainly concern the deleted email accounts and conflicting testimony of former employees of defendant, and the failure of defendant to produce documents and/or deny the existence of certain documents that had been produced in similar lawsuits against the defendant. *Id.* at *1, 5. The plaintiff alleged other discovery abuses by defendants, such as withholding the identity of several former employees and a potential eyewitness, baseless objections to discovery requests, a failure to fulfill its obligations in regard to ESI, and an inadequate and late-disclosed privilege log, to name a few. *Id.* at 45, 58, 93, 65, 107. Plaintiff would have this Court believe that the multitude of discovery abuses litigated in *Collins-Williams* are also present here, but such is not the case.

Here, counsel for both Plaintiff and Defendants participated in discovery cooperatively since the onset of litigation and despite the recent accusations by Plaintiff, Defendants and Defense Counsel remain cooperative and candid in their representations to counsel and the Court. Unlike *Collins-Williams* in which information potentially crucial to the plaintiff's case was lost by the deletion of email accounts or withheld, Defendants' WhatsApp messages and data have been

9

preserved and produced to Plaintiff in full except for messages protected by the attorney-client privilege and one message that was redacted to protect the reserve amount set by the insurer on a claim which is not relevant to any issue in the case and would not lead to the discovery of admissible or discoverable information or evidence.

1. *Collins-Williams* Does not Support a Finding that Defendants Have Spoliated WhatsApp Data.

Plaintiff repeatedly asserts that Defendants have "spoliated" WhatsApp data, but it is not entirely clear from Plaintiff's briefing *how* Defendants have done so after the production of the allegedly spoliated data. Notably, totally absent from Plaintiff's discovery requests to Defendants is any mention of metadata. The only request regarding cellphone records "showing incoming and outgoing calls, texts and messages" is limited to the "date of the incident." (*See* Exhibit H, Plaintiff's First Interrogatories and Request for Production to Defendants).[3] Plaintiff has yet to send additional requests pertaining to the information that underlies this entire spoliation dispute, yet Defendants and Defense Counsel have endeavored to obtain the information in the spirit of cooperation and good faith.

Unlike *Collins-Williams* in which the entire email accounts which Plaintiffs requested data from but were deleted in their entirety, the WhatsApp data requested by Plaintiff not only exists but has been produced. To the extent Plaintiff takes issue with the affidavits of Defendants submitted with Defendants' Response in Opposition to Plaintiff's Motion for Sanctions (Docs. 60-3, 60-4), the alleged conflicting testimony does not equate to spoliation. Rather, the appropriate remedy in such a situation is through the cross-examination at trial or deposition of

---

[3] Defendants requested these records through a subpoena and subsequently provided Plaintiff with the responses in Defendants' 8th Supplemental Discovery Responses on June 3, 2024.

Defendants. Defendants have offered to be redeposed to address any of these issues. To date, Plaintiff has not requested such depositions.

> 2. *Collins-Williams* Similarly Does not Support a Finding that Defendants' Have Spoliated GoMotive Data.

Plaintiff asserts that Defendants have spoliated GoMotive data and metadata and intentionally deprived Plaintiff of this information in bad faith. However, as Defendants have explained above and shown with the attached exhibits, Plaintiff's assertions are baseless. Defendants have not only communicated with Plaintiff's Counsel regarding the efforts undertaken to obtain the GoMotive data and metadata. Plaintiff has made clear that Defendants' efforts to keep Plaintiff's Counsel updated regarding those efforts was not enough based on Plaintiff's assertions. However, Defendants have now explained and supported the details of those efforts with the filing of this brief. Further, the original agreement pertaining to cooperation to obtain information did not include the obligation to provide direct access to opposing counsel to unrestricted access to the Defendants' accounts.

In addition to Defendants' detailed explanation of the steps taken to obtain the data from GoMotive, Defendants have simultaneously produced whatever information they have received to Plaintiff. Plaintiff and his Counsel are now in possession of all evidence obtained from GoMotive that Defendants have received. Yet, Plaintiff's Counsel asserts in his briefing that "[i]f Defense Counsel were to simply provide Plaintiff [sic] Counsel with the login, the discovery and spoliation issues could be determined in a single day." (Doc. 70, p. 10). If only it were that simple. Even if Defendants had not provided all information provided to them by GoMotive, Plaintiff's request that he be provided with the login information for Defendants' GoMotive account goes well beyond what is permitted by the Federal Rules of Civil Procedure and the Federal Rules of Evidence, nor does Plaintiff cite to any authority supporting this proposition.

11

While the differences between an individual's social media account and Defendant ARA's GoMotive account are obvious, the basis for denying a party's request for the login information to such an account can be easily equated. To give an adverse party the password to a personal or business account, regardless of the nature of the account, is to give that party carte blanche authority to not only access a plethora of information and data that may be wholly irrelevant to the underlying litigation but, importantly, the ability to change or manipulate that data. As this Court has aptly surmised in denying a defendant's request for the plaintiff's Facebook username and password: "[a]dmittedly, the passwords would provide access to potentially relevant information. But that access would necessarily include large swaths of irrelevant and, potentially, sensitive information. Even without the passwords, Defendants are able to obtain relevant information contained in Plaintiff's social media accounts through targeted discovery requests." *Prospero v. Sullivan*, No. 2:20-CV-110, 2022 WL 19837447 (S.D. Ga. April 25, 2022) *4.

The same is true for Plaintiff in this case. Defense Counsel has provided all evidence received from GoMotive, but Defense Counsel has, on more than one occasion, communicated to Plaintiff's Counsel that not only would Defense Counsel agree to Plaintiff's Counsel's expert inspecting Defendants' GoMotive account under the observation and in coordination with Defendant's expert, but Defense Counsel **recommended** it take place. (*See* Exhibit I, August 28, 2024 Correspondence from Edward Hughes to John O'Briant). Plaintiff's Counsel has not responded to or even acknowledged this offer. Instead, Plaintiff misrepresents in his First Supplemental Reply that "Plaintiff [sic] counsel is willing to review these accounts while supervised by Defense Counsel or the Court, but Defendants are unwilling to do so." (Doc. 70, p. 10). As shown by the attached exhibits, Defense Counsel is not only more than willing to allow Plaintiff's Counsel the ability to review Defendants' GoMotive account under supervision, but

12

Defense Counsel was the first to posit the idea. Thus, the purported basis for Plaintiff's request for Defendants' GoMotive login credentials is not only unsupported, but false.

 B. *Plaintiff's Allegations of Perjury and Fraud Upon the Court are Patently False.*

As mentioned above, Plaintiff has alleged that Defendants are "liars," have committed perjury, admitted to spoliating evidence, mislead Plaintiff, and committed fraud upon the Court. (Doc. 70, pp. 3, 4). These allegations are not only unsupported by Plaintiff's allegations but are unsupported by law and a blatant misrepresentation to the Court.

Unsurprisingly, Plaintiff accuses Defendants of fraud upon the court without a factual explanation or citation to legal authority.

The Eleventh Circuit has stated that:

> 'Fraud upon the court' should, we believe, embrace only that species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication, and relief should be denied in the absence of such conduct. Fraud inter parties, without more, should not be fraud upon the court, but redress should be left to a motion under Rule 60(b)(3) or to an independent action.

*Travelers Indem. Co. v. Gore*, 761 F.2d 1549, 1551 (11th Cir. 1985).

Plaintiff has not alleged, nor is there any evidence to suggest, that Defendants have committed any action that could be described as an attempt to defile the court or perpetuate fraud so that the court is unable to conduct its judicial function. The evidence, in fact, is to the contrary. Defendants have admitted to editing the logs and provided an explanation in the form of an affidavit to explain the reason behind those actions. (*See* Doc. 60). Defense Counsel has, as explained above, communicated to Plaintiff's Counsel that Defendants are willing to be redeposed in order for Plaintiff's Counsel to seek clarification as to any discrepancies they may have. But rather than attempt to cooperate with Defendants or Defense Counsel, Plaintiff's

Counsel ignores Defense Counsel's legitimate attempts to engage fully in cooperative discovery and makes affirmative misstatements regarding the facts.

Until the recent phone call following the renewed effort of Defense Counsel, Defense Counsel's prior attempts to cooperate with Plaintiff's Counsel regarding discovery have been met with contempt. (*See* Exhibit J, September 18, 2024 Email Exchange from John O'Briant to Edward Hughes). There are many, many emails from Plaintiff's Counsel that are not only argumentative but go beyond zealous representation to include incredibly serious allegations such as fraud on the court. These allegations are very troubling and not taken lightly. As shown above, this is a dispute on the sufficiency of document/data production but because there has been a belief that Defendants lied under oath it has morphed into allegations of fraud not only as to Defendants but now their counsel. These accusations are emphatically denied by Defendants and by undersigned counsel. If Plaintiff believed inaccurate or incomplete information was provided, he has two remedies: impeachment or a motion compel. Throwing around these allegations and threatening Defendants and their counsel is unwarranted.

C.  *Defendants' Election Regarding Oral Argument*

Defendants do not believe that the Court or Parties would benefit from oral argument on this matter. However, should the Court require oral argument, Defendants' Counsel will be prepared to participate.

**CONCLUSION**

As shown above and through the attached supporting exhibits in addition to the reasons set forth in Defendants' Response in Opposition to Plaintiff's Motion for Sanctions (Doc. 60), Plaintiff's Motion should be denied in its entirety. Plaintiff is in possession of all evidence in Defendants possession short of the login credentials. Defendants have, and will continue, to meet

their discovery obligations as required by the Federal Rules and in the spirit of cooperation and good faith. Lastly, this Court should further find that there has been no fraud upon the Court by Defendants or Defense Counsel.

This 11th day of October, 2024.

ELLIS PAINTER

*s/Edward M. Hughes*
EDWARD M. HUGHES
Georgia State Bar No. 375650
bhughes@ellispainter.com
TRACY O'CONNELL
Georgia State Bar No. 553460
toconnell@ellispainter.com
Attorney for Defendants ARA Transport, Inc. and Alexis Rodriguez

Post Office Box 9946
Savannah, Georgia  31412
912-233-9700 Telephone
912.-233-2281 Facsimile

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a true and correct copy of the within and foregoing document on all parties in accordance with the directives from the Court Notice of Electronic Filing ("NEF") which was generated as a result of electronic filing.

This 11th day of October, 2024.

                                                    ELLIS PAINTER

                                                   *s/Edward M. Hughes*
                                                   EDWARD M. HUGHES
                                                   Georgia State Bar No. 375650
                                                   bhughes@ellispainter.com
                                                   TRACY O'CONNELL
                                                   Georgia State Bar No. 553460
                                                   toconnell@ellispainter.com
                                                   Attorney for Defendants ARA Transport, Inc. and Alexis Rodriguez

Post Office Box 9946
Savannah, Georgia  31412
912-233-9700 Telephone
912.-233-2281 Facsimile